IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DEMARIO LEE MCFARLIN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| ) | **Civil Action No. 21-cv-100-CG-B** |
| ) | |
| **vs.** ) | |
| ) | **Criminal Action No. 19-cr-87-CG-B-1** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## ORDER

Demario Lee McFarlin (hereinafter "McFarlin"), a federal prisoner
proceeding without counsel (*pro se*), has filed a Motion to Vacate, Set Aside, or
Correct Sentence under 28 U.S.C. § 2255. (Doc. 44). The Government filed a timely
response (Doc. 49), and McFarlin replied. (Doc. 50).

## I. Background

On March 28, 2019, the grand jury for this judicial district returned an
indictment against McFarlin, charging him with one count of possession of a
firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g). (Doc. 1).
On September 16, 2019, he received Court appointed counsel (Doc. 7, text order)
and was released on conditions (Doc. 8, text order).

### A. Conditions of Release

During his arraignment on September 16, 2019, McFarlin acknowledged that
he is aware of the conditions of his release, and as such, he promised to abide by all

of the conditions imposed by the Court. (Doc. 10). Those conditions included *inter alia*: to refrain from committing any offense in violation of federal, state, or local law while on release; to appear at all proceedings as required; to report to the United States Probation Office as directed; and to refrain from travel outside of the Southern District of Alabama unless approved by the Probation Office. *Id.* He also acknowledged that he was aware of certain penalties and sanctions that could result from the violation of any of his conditions. *Id.*

**B. Plea Agreement and Factual Resume**

On October 7, 2019, McFarlin filed a Notice of Intent to Plead Guilty to Count 1 of the Indictment. (Doc. 14). On October 21, 2019, McFarlin entered his plea of guilty in accordance with the terms of his Plea Agreement. (Doc. 21, text order). Through his Plea Agreement, McFarlin acknowledged that he is waiving the following rights: to plead not guilty, to have a trial by an impartial jury, to confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense, and to not be compelled to incriminate himself. (Doc. 20 at p. 1). McFarlin also acknowledged that he was in full possession of his senses and mentally competent to understand the terms of his plea agreement and his guilty plea. *Id.* at p. 2. He also affirmed that he had the benefit of legal counsel in negotiating his Plea Agreement, and counsel had explained to him the essential legal elements of the charge brought against him as well as the evidence and the law as it related to the facts of his case. *Id.* McFarlin agreed that the Factual Resume incorporated with his Plea Agreement constituted evidence in his case, and the Factual Resume was true

and correct. *Id.* at p. 3. McFarlin also declared that his plea of guilty was freely and voluntarily made and was not the result of force, threats, promises, or representations, apart from the representations set forth in his Plea Agreement. *Id*. He further acknowledged that no promises had been made from anyone as to the particular sentence the Court would impose, and he was pleading guilty because he s guilty. *Id.*

McFarlin stipulated that the Factual Resume is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the evidence set forth in the Factual Resume beyond a reasonable doubt. *Id*. at p. 14. The Factual Resume begins with a recitation of the elements of Count 1 of the Indictment (18 U.S.C. § 922(g)(1)): (1) that the Defendant knowingly possessed a firearm in or affecting commerce, as charged; and (2) that before the Defendant possessed the firearm, the Defendant had been, and knew he had been, convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense. *Id.* at p. 15. Specifically, the Factual Resume explains that Mobile County Deputy Keeler conducted a routine traffic stop of McFarlin on January 10, 2019 for failure to dim head lights. *Id.* at p. 16. During the stop, McFarlin advised Deputy Keeler that he did not have any identification, and he could not locate his insurance information. *Id.* McFarlin also advised the deputy that there were no weapons in the vehicle. *Id.* Sergeant Miller and Corporal Cassidy later arrived on the scene as back up. *Id.* Sergeant Miller observed from the passenger window an open beer container in the middle console of the vehicle. *Id.*

Deputy Keeler then asked McFarlin to step out of the vehicle to conduct a "Terry Pat Down" for officer safety. *Id.* Deputy Keeler asked McFarlin once again whether there were any weapons in the vehicle, and he also asked McFarlin if he could search the vehicle. *Id.* McFarlin consented to the search. *Id.*

During the search of the vehicle, Deputy Keeler located a pistol between the middle console and the driver's side seat. *Id.* McFarlin stated that he did not have a pistol permit, and he was the only occupant of the vehicle. *Id.* Corporal Cassidy checked the identifiers provided by McFarlin and learned that McFarlin had been previously convicted of Commercial Burglary in the Second degree on January 14, 2013 in the Superior Court of Orange County, California. *Id.* at pp. 16-17. Corporal Cassidy advised McFarlin of his Miranda Rights, which McFarlin waived. *Id.* at p. 17. McFarlin admitted knowing he was a convicted felon and that he was aware he was not supposed to be around any ammunition or firearms. *Id.*

### C. Presentence Investigation Report

The Presentence Investigation Report ("PSR") detailed McFarlin's offense conduct, criminal history, and sentencing options. *See* Doc. 28. Notably, the PSR determined that McFarlin is not entitled to an Adjustment for Acceptance of Responsibility because he was arrested on November 10, 2019 (while he was on pretrial release) for Domestic Violence in the Third degree. *Id.* at p. 4. Due to his arrest, the PSR found that McFarlin has not exhibited acceptance of responsibility as evidence by his continued criminal conduct. *Id.* It concluded that McFarlin's total offense level was 20 with a criminal history category of V. *Id.* at pp. 4-5, 7. Based on

4

his offense level and criminal history category, the PSR determined that the guideline imprisonment range is 63 to 78 months. *Id.* at p. 9.

On January 10, 2020, McFarlin's counsel filed a Revised Position Statement on Sentencing Factors and objected to the PSR's finding that McFarlin was not entitled to an adjustment for acceptance of responsibility. (Doc. 30). Counsel argued *inter alia* that McFarlin "had been falsely accused of a completely unrelated misdemeanor offense and has had no opportunity to confront his accuser in a court of law nor has he been found guilty of any offense." *Id.* at p. 1. Counsel also asserted, "Any citizen may sign a misdemeanor complaint and there is no adjudication of the allegations that would warrant a finding that he has not made a 'voluntary termination or withdrawal from criminal conduct.'" *Id.*

Following counsel's objection, the probation office provided an Addendum to the PSR, which set forth additional details surrounding McFarlin's November 10, 2019 arrest for domestic violence. (Doc. 32). According to the Addendum, on November 10, 2019, Mobile Police Officers responded to a domestic dispute at an apartment complex. *Id.* at p. 1. Upon arrival, the officers spoke with the victim, Reagan Abner, who advised that her boyfriend, McFarlin, punched her in the mouth, pulled her hair, and ran over her foot in the parking lot. *Id.* Officers also observed a small mark on Abner's upper lip, and they interviewed Abner's 6-year-old daughter and 11-year-old nephew, who both advised the officers that they saw McFarlin hit Abner. *Id.* Thereafter, McFarlin was arrested and charged with Domestic Violence in the Third degree. *Id.* The Addendum to the PSR concluded

that the Court, at sentencing, would determine whether the alleged criminal conduct precludes the defendant from receiving a reduction for acceptance of responsibility.

### D. Sentencing Hearing

On January 22, 2020, McFarlin appeared before the undersigned for sentencing. (Doc. 46). At the beginning of the hearing, McFarlin's counsel informed the Court that she had been over the PSR with McFarlin, and McFarlin wished to object to the acceptance of responsibility adjustment. *Id.* at p. 2.

> THE COURT: All right. Ms. Cameron, have you and Mr. McFarlin been over the presentence report?
>
> MS. CAMERON [Counsel for McFarlin]: Yes, ma'am, we have.
>
> THE COURT: And I understand that you have an objection to no acceptance of responsibility; is that correct?
>
> MS. CAMERON: Yes, ma'am. I filed a written position statement to that effect. While Mr. McFarlin was out on bond, his significant other filed a criminal complaint against him for domestic violence, harassment. As the Court's aware, a misdemeanor complaint can be signed by anyone. There is no extrinsic investigation that is done. Police officers don't do a narrative or a report like in a felony case. He would have to go in front of a judge and be adjudicated for there to be really any veracity given to this report at this point. So based on that, based on the fact that there's nothing in Mr. McFarlin's past criminal record that would indicate any kind of violence - - other than he has what either involves breaking and entering things or drug-related offenses - - there's no violence of any type, assaults or domestic violence or anything like that.
> I would ask that the Court give him acceptance of responsibility. He pled guilty immediately to this charge. He's agreeing to forfeit the weapon that belonged to his uncle. And based on that, I don't think that it's fair to say that he has not ceased his criminal conduct and we would ask that he receive those three points.

THE COURT: What is the government's position?

MR. KOPF [Counsel for the Government]: Your Honor, it's the United States' position that the defendant is not entitled to the adjustment for the acceptance of responsibility, and we agree with the PSI report and probation's recommendation. As mentioned in the presentence report, according to the sentencing guidelines commentary, section 3E1.1, this adjustment has been denied where a defendant continues his unlawful conduct after arrest. And there are a couple of cases, including the U.S. versus Jordan. It's a First Circuit case that's 549 F. 3d 57, a 2008 case, where a defendant was arrested on drunk driving and possession of a knife and that person was denied the adjustment. So Your Honor, it's just the government's position that he is not entitled to the adjustment and we agree with the presentence investigation.

THE COURT: All right. Does the probation office have a copy of the report from the police department?

MR. WATKINS: Yes, Your Honor.

THE COURT: May I see it?

MR. WATKINS: (Complying.)

THE COURT: Have you seen it?

MS. CAMERON: No, ma'am, I have not.

THE COURT: Okay.

MS. CAMERON: I did see the addendum that referenced some of the facts.

THE COURT: (Reading.) Do you want to take a look at it?

MS. CAMERON: Yes, ma'am, please. (Reading.)

THE COURT: Do you have anything else you want to offer on that?

MS. CAMERON: No, ma'am. I would just say that I believe that, since the officers did not witness this offense and it is a misdemeanor, that Ms. Abner would be the person who would have

to go and actually sign a complaint against him. My client advised me that he did see a magistrate or a municipal judge the day after he was arrested for this offense via videoconferencing and they told him if a complaint had not been sworn within three days, that his cases would be dismissed, but that he needed to be back in court on December the 13th.

THE COURT: And he was in custody here.

MS. CAMERON: Yes, ma'am. Yes. He was in Brewton, I believe. And so he did not get taken down for that December the 13th hearing. So I don't actually know if there was ever a sworn complaint. Does the probation officer happen to know that?

MR. WATKINS: I only know a warrant was issued December the 12th.

MS. CAMERON: Okay -- December the 12th?

MR. WATKINS: Yes.

MS. CAMERON: Hmm. So I don't know the outcome of that. But I would just suggest that if Ms. Abner is not going to pursue the charges and the case was ultimately dismissed, that he would get these three points for acceptance. And I discussed with my client the thought process of asking to reset the sentencing to see what happens in the City cases and explained to him that would be a big risk because not only if he was convicted he would lose his three points for acceptance, but he would also get another two points criminal history for getting a new conviction and jail time. I mean, he was actually initially wanting to do that. So I think he feels pretty confident that Ms. Abner is not going to pursue these charges against him. But then at the last minute he decided that he wants to go ahead and proceed today. So I just want the Court to have all the facts in front of them. I think that he's entitled to the three points, and that's what we're asking the Court to do.

THE COURT: Well, I am not so concerned about whether or not he's convicted of a complaint that was made by his significant other. What I'm concerned about is the facts, as to whether or not that happened.

MS. CAMERON: Yes, ma'am.

THE COURT: And according to the police report, not only did the victim make the report, the police officer responding saw a mark on her upper lip and also talked to the victim's 11-year-old nephew and six-year-old daughter, who both advised that they saw Mr. McFarlin hitting her. Now, I think that that is sufficient evidence for me to find that he is not entitled to acceptance of responsibility, and therefore that is my finding in this case.

MS. CAMERON: Yes, ma'am.

THE COURT: So I find that the total offense level is 20 with a criminal history category of V. Are there further objections to the presentence report?

MS. CAMERON: No, ma'am.

*Id.* a pp. 2-6. The Court thereafter asked McFarlin if he had anything he would like to say before the imposition of his sentence, and he responded in the negative. *Id.* at p. 8. After considering the statutory purposes of sentencing, the sentencing guidelines, McFarlin's criminal history, and the recent events that transpired during the pendency of his case, the Court determined that the mid-range of the sentencing guidelines was an appropriate place for McFarlin's sentence. *Id.* The Court imposed a sentence of 70 months imprisonment. *Id.* at p. 9. McFarlin did not file a direct appeal.

### E. McFarlin's § 2255 Motion

McFarlin's § 2255 Motion and Memorandum in Support assert that McFarlin did not receive effective assistance of counsel. (Docs. 44 and 44-1). Specifically, McFarlin argues that counsel was ineffective because she did not advise McFarlin that a violation of the terms of his bond conditions could result in him not receiving the point-deduction for acceptance of responsibility. (Doc. 44-1 at pp. 2-4). McFarlin

contends that he advised his counsel that the report Abner provided to the police officers in relation to his domestic violence charge was false, and McFarlin was confident that Abner would come to his sentencing hearing and testify as such. *Id.* at p. 5. However, McFarlin argues that counsel did not contact Abner or any of the officers that responded to the domestic violence incident. *Id.* McFarlin also asserts that his counsel "failed to object to the statements or charges pending that the court used as factual". *Id.* at p. 6. McFarlin argues that he "suffered prejudice" due to his counsel's failure to research "the false report" and allow the Court the opportunity to hear Abner's testimony because "there is a reasonable probability that the Court would have granted Mr. McFarlin the 3-level reduction". *Id.*

In support of his § 2255 motion, McFarlin provides an affidavit authored by Reagan Abner that states she lied to the police officers about the domestic violence incident. *Id.* at pp. 9-10. Abner avows that she and McFarlin got into a verbal altercation over a cell phone, and when McFarlin refused to give her the phone, Abner called the police. *Id.* at p. 9. Abner asserts that she lied and told the officers that McFarlin tried to hit her with his car. *Id.* The affidavit also declares that the police officers could not find any injuries, and they informed her that McFarlin could not be arrested unless a witness saw McFarlin hit Abner. *Id.* According to Abner, she then told her nephew to lie to the police officers and tell the officers that McFarlin hit her. *Id.* Abner asserts she later emailed the State Attorney's office to inform them that she lied to the officers, and if she had been called to testify at

McFarlin's sentencing hearing, she would have informed the Court of the aforementioned facts. *Id.* at p. 10.

In response, the Government argues that McFarlin has not shown that his counsel's performance was deficient, and he has not established that he was prejudiced by his counsel's errors. *See* Doc. 49. In support of its arguments, the Government provides an affidavit authored by Ashley Cameron, McFarlin's former attorney. *Id.* at pp. 18-19. In the affidavit, counsel states that she does not have any recollection of telling McFarlin that a new arrest while he was on conditions of release would result in the removal of the three-point deduction for acceptance of responsibility. *Id.* at p. 18. Counsel asserts, however, that McFarlin did not ask her to subpoena Abner or ask Abner to appear on McFarlin's behalf at his sentencing hearing. *Id*. Counsel also declares that McFarlin informed her that the domestic violence allegations Abner made to the police were false, and McFarlin believed that Abner did not intend to pursue the charges against him. *Id.* Based on that discussion with her client, counsel states that she spoke with the Assistant United States Attorney handling McFarlin's case to see if the Government would object to a continuance to allow the domestic violence case to be adjudicated before sentencing. *Id.* Counsel additionally attests that she warned McFarlin of the risk involved in seeking a continuance because a conviction could result in a higher guideline range for McFarlin. *Id.* Counsel also declared that she filed an objection to the PSR, but based on the information provided in the Addendum to the PSR, it seemed unlikely

that Abner's testimony at the sentencing hearing would be beneficial to McFarlin. *Id.*

McFarlin filed a Reply to the Government's response, wherein he reiterates many of the contentions presented in his § 2255 motion. *See* Doc. 50.

## II. Legal Standards

### A. General Standard of Review for 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner may "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). However, "[o]nce the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted". *United States v. Frady*, 456 U.S. 152, 164 (1982) (stating that this is especially true when a defendant "already has had a fair opportunity to present his federal claims to a federal forum"). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* (internal citations, quotations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715 [(11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the . . . affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted); *accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). In making this determination, the Court is aware that it must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin*, 767 F.3d at 1215.

## B. Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504; *see also United States v.*

*Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687–88, 694).

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted); *see also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test

is not easily met; . . . 'the cases in which habeas petitioners can properly prevail on

the ground of ineffective assistance of counsel are few and far between.' " *Johnson*,

256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995)

(en banc) (citation omitted)).

> The petitioner satisfies the test's performance prong by proving
> that counsel's performance failed to meet the standard of
> reasonableness under prevailing professional norms. Our
> evaluation of counsel's performance is highly deferential; we must
> indulge a strong presumption that counsel's performance was
> reasonable and that counsel made all significant decisions in the
> exercise of reasonable professional judgment. We review counsel's
> performance from counsel's perspective at the time, to avoid the
> distorting effects of hindsight. Our review is objective, in that we
> consider whether there was any reasonable justification for the
> attorney's conduct. Thus, the petitioner must establish that no
> competent counsel would have taken the action that his counsel did
> take.

> The petitioner satisfies the *Strickland* test's prejudice prong by
> showing that there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceeding would
> have been different. A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

*Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) (internal citations and

quotation marks omitted).

Thus, "[t]he test for ineffectiveness is not whether counsel could have done

more; perfection is not required." *Waters*, 46 F.3d at 1518; *accord, e.g.*, *Burt v.*

*Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the

right to perfect counsel; it promises only the right to effective assistance . . . ."). "A

lawyer can almost always do something more in every case. But the Constitution

15

requires a good deal less than maximum performance." *Atkins v. Singletary*, 965

F.2d 952, 960 (11th Cir. 1992).

## III. Analysis

As discussed *supra*, McFarlin's § 2255 motion asserts that counsel rendered

ineffective assistance by failing to fully explain the potential consequences of

violating his conditions of release while awaiting sentencing. (Doc. 44-1 at p. 4)

McFarlin also faults counsel for not calling Abner as a witness at his sentencing

hearing. (Doc. 44-1 at pp. 5-6). For the reasons set forth herein, the Court finds that

McFarlin's arguments are without merit.

### A.  McFarlin's counsel was not ineffective for failing to discuss how a bond violation would affect his adjustment for acceptance of responsibility.

McFarlin argues that counsel was ineffective because he was not informed

that "he would not be eligible for his acceptance points if [sic] a violation of bond

occurred." (Doc. 44-1 at p. 2). This argument is belied by the record.

First, the very terms of McFarlin's plea agreement contradict his assertion

that the plea agreement does not "warn or advise" of such a consequence. *Id*. The

"Sentencing" section of the plea agreement provides, in relevant part:

> The defendant understands that this Plea Agreement does not
> create any right to be sentenced in accordance with the Sentencing
> Guidelines, or below or within any particular guideline range, and
> fully understands that the determination of the sentencing range or
> guideline level, or the **actual sentence imposed**, is solely within
> the discretion of the Court.

> The United States will provide all relevant sentencing
> information to the Probation Office for purposes of the pre-sentence
> investigation. Relevant sentencing information includes, but is not
> limited to, **all facts and circumstances of this case** and
> information concerning the **defendant's conduct** and background.

(Doc. 20 at p. 5) (emphasis added). Accordingly, it is clear that McFarlin

received notice that the Court could consider information concerning his

conduct in imposing the sentence.

Furthermore, it is evident from the record that counsel's representation did

not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–

88, 694); *White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (stating that

the test for ineffective assistance "has nothing to do with what the best lawyers

would have done. Nor is the test even what most good lawyers would have done. We

ask only whether some reasonable lawyer" could have acted as defense counsel

acted) (citation omitted). Here, McFarlin's counsel advocated for McFarlin to receive

the adjustment for acceptance of responsibility in the Revised Position Statement

(Doc. 30) and at the time of sentencing (Doc. 46 at pp. 2-6). In fact, the supporting

basis for counsel's written objection to the PSR—that McFarlin "has been falsely

accused of a completely unrelated misdemeanor" (Doc. 30 at p. 1)—is the same

argument McFarlin sets forth to support his ineffective assistance claim. (Doc. 44-1

at p. 4) (stating that McFarlin's bond was revoked because of an 'false arrest

charge,' while on bond, on December 3, 2019, and that prior to sentencing, McFarlin

spoke with his legal counsel about the case and the facts; counsel was aware of the

arrest and that Mr. McFarlin had not been convicted of that charge. The charge was

later dismissed[1] from docket). Thus, it is evident from McFarlin's own contentions that the crux of his ineffective assistance claim is not an issue with his counsel's performance, but rather, the ultimate result of the proceedings. The record establishes that his counsel advocated in an objectively reasonable manner for McFarlin to receive an adjustment for acceptance of responsibility, and counsel cannot be deemed ineffective merely because she was unable to convince the court to do so.[2] *See Strickland*, 466 U.S. 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.") (citation omitted). Thus, McFarlin's claim for ineffective assistance of counsel fails on this ground.

---

[1] As stated *supra*, "We review counsel's performance from counsel's perspective *at the time*, to avoid the distorting effects of hindsight." *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) (internal citations and quotation marks omitted) (emphasis added). Furthermore, the Court made clear at sentencing that it was not concerned about whether or not McFarlin was convicted of a complaint, but rather, the facts as established in the police report. (Doc. 46 at p. 7).

[2] It is well established that the sentencing judge is in a "superior fact-finding position" because she "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Butler*, 729 F. Fed.Appx. 732, 736 (11th Cir. Apr. 2, 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007). As such, the Court has "broad discretion to grant or deny a reduction under § 3E1.1." *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017). The Court exercised its sentencing discretion and found there was enough evidence to determine that McFarlin was not entitled to acceptance of responsibility. (Doc. 46 at p. 6). McFarlin did not challenge his sentence on direct appeal, and it is too late to question it here. *See, e,g, Lynn*, 365 F.3d at 1232 ("[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.").

### B. McFarlin's counsel was not ineffective for failing to call Abner as a witness at the sentencing hearing.

McFarlin also contends that counsel was ineffective for failing to call Abner as a witness to testify at his sentencing hearing (Doc. 44-1 at p. 6). This claim is without merit.

It is well settled that the decision to call (or not call) witnesses is a strategic one that is left to the discretion of counsel. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (citation omitted); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."); *see also Ball v. United States*, 271 Fed.Appx. 880, 884 (11th Cir. Mar. 28, 2008) (stating that decisions in regard to alibi witnesses were "quintessential trial strategy") (quoting *Chandler v. United States*, 218 F. 3d 1305, 1314 n.14 (11th Cir. 2000).

Here, the Court is unable to find that counsel was ineffective for not calling Abner as a witness at the sentencing hearing. In her affidavit, counsel states that she believed Abner's testimony at the sentencing hearing would not be beneficial because the police report from the domestic violence incident reflected that Abner was injured, and there were two child witnesses to the altercation. (Doc. 49 at p. 18). Notably, counsel's reasoning is consistent with the Court's findings at sentencing. (Doc. 46 at p. 6). Given the circumstances and counsel's perspective at the time, the decision not to call a witness—especially a witness who had lied to

police officers—is a decision that was made in the exercise of reasonable professional judgment. It is simply objectively reasonable for counsel not to call a witness whose credibility has been undermined. Accordingly, McFarlin fails to establish that no competent counsel would have taken the action that his counsel did take. *See Newland*, 527 F.3d at 1184. McFarlin's ineffective assistance of counsel claim on this ground is without merit.

## IV. Conclusion

For the foregoing reasons, Demario Lee McFarlin's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 44) is **DENIED**.

**DONE** and **ORDERED** this 14th day of March, 2022.

     /s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE